Good afternoon, Illinois Public Court First District Court is now in session. The 6th division, the Honorable Justice Michael B. Hyman presiding, case number 24-0136, People v. Jonathan Primm. Good afternoon, I'm Justice Hyman. With me is Justice Carl A. Walker and Justice Celia Amras. We will conduct this as if we were in the courtroom. Each side has 20 minutes. The appellant, please tell us how many minutes you want to reserve for rebuttal. If you, you'll probably be interrupted or we'll be asking questions. So answer the questions. And we won't hold you to the exact 20 minutes, but please try to keep your argument within 20 minutes. Appreciate it. So please introduce yourselves first for the appellant. Good afternoon. My name is Haley Yesman with the Office of the State Appellate Defender for Appellant Jonathan Primm. Thank you. You're on mute. That's one thing we never say in the courtroom, unless we're on Zoom, but, and don't worry, everybody has done it. Okay, we've done it too. Thank you, Your Honor. Paul Mosicki, W.O.J. C.I.C.K.I. on behalf of the people. Thank you. Okay, Ms. Yesman, you may proceed. Good afternoon. May it please the court. Again, my name is Haley Yesman with the Office of the State Appellate Defender for Appellant Jonathan Primm, and I would like to reserve two minutes for rebuttal, please. Our argument today is twofold. First, we are asking you to find that, in accordance with the holding and according to the test set out in New York State Rifle and Pistol Association versus Bruin, that there is no historical analog for statutorily prohibiting people under 18 from carrying small firearms on their person. And, as a result, to find that the Illinois statute that prevents people younger than 18 from carrying concealable firearms on their person to be unconstitutional. The second part is, after finding this Illinois law unconstitutional, we are asking you to find that Jonathan Primm's post-conviction petition made a substantial showing that his right to due process was violated with the sentencing judge explicitly considered in aggravation his prior conviction under the void Illinois law. The fact that the judge gave Primm a 40-year prison sentence when he had the option to sentence him to only 20 years is just further evidence of the fact that this judge indeed considered this void conviction as an aggravating factor. In Bruin, the Supreme Court found that states can no longer justify handgun regulations on the basis of— Didn't the judge state, though, just backing up a second, I know you probably want to go back to your first factor, your first issue, but the judge stated that it was because he was the ringleader, and that was the reason why the judge probably gave him more time. I mean, of course, we can't get into the judge's mind, but the judge did say that, correct? Stated, I'm sorry, I couldn't hear what you said. Oh, the judge stated because he was the ringleader? I believe that was the phrase the judge used, that he was the leader. That's what disturbed the judge, and maybe that's why he got more time. Yeah, I certainly acknowledge that that is one of the factors that the judge considered, but the judge did also explicitly mention this prior conviction in aggravation. Specifically, the judge said, here's a good example of a situation where someone was convicted of unlawful possession of a handgun placed on probation. The probation was completed unsatisfactorily, and rehabilitative potential considered in that light, to me, indicates that the defendant may actually go out there and commit another violent offense. So, to me, that indicates that the judge also was considering an aggravation, this void conviction, and a deed to the specific facts at issue here. If we don't agree with your first argument, then we never reach the second, correct? That would be correct, yes, your honor. So, in Bruin, the Supreme Court held that states can no longer justify handgun regulations on the basis that they represent sound policy choices. So, how do you explain that the Supreme Court in Heller said unequivocally, and I'm going to quote, Nothing like a right for minors to own and possess firearms has existed at any time in this nation's history. And they also said, laws banning the juvenile possession of firearms have been commonplace for almost 150 years. So, in light of that, and in light of the Illinois Supreme Court's decisions, all of which have found it inappropriate, how can, what ground do you have to proceed on this argument? Sure, your honor. Well, first, I would like to bring up the fact that Heller predated Bruin by a large margin. So, even if there were some similar considerations at play here, the two-step test that Bruin made explicit was not exactly followed in Heller. Let's talk about the history, and here's the history stated quite clearly that in 150 years, it's been commonplace. Right, right. And I understand that that is in Heller. However, according to Bruin, they did say that it is the state's burden to set out that precedent and history. Well, but if the history has already been determined by the Supreme Court, why would they have to read on this issue with regard to juveniles? I'm not talking about any other issue, but we're talking about the one with juveniles. They did not in any way reverse Heller. They didn't distinguish Heller on this issue. So, Heller is still in full force and effect, isn't it? Right, absolutely. We have to follow Heller. So, what leeway do we have to even reach your argument when we have to face that the United States Supreme Court has made it abundantly clear regarding what it says is the history? Absolutely. Well, I think what we have here is that Bruin has set out a much more robust test for the historical analogs that must be provided in order for a law to be deemed constitutional. And again, because in Heller, there was some historical analysis done and many general statements made about there being indeed a historical analog. However, in terms, if there is a more robust analysis done, it does reveal that there are plenty of historical analogs that would show that people under the age of 18 did indeed have the right to own firearms or carry firearms. I actually looked at many articles and cases on this issue. I couldn't find a one that actually looked at the history and came out with that conclusion you just stated. They had a right? Where did they have a right? So, one example would be for militia service at the time of this country's founding. They had a right to a militia service? Or did they have an obligation for militia service? They had an obligation to militia service. So, let's stop right there. What's the difference between an obligation and a right? Well, an obligation is something that you are required to do and a right is something that you are afforded as either a citizen or a person residing in the United States. Very good. I agree. So, they were obligated to serve. Does that give them a right to have arms other than in their service? Sure, and that might be the case, but also I think that does point to the fact that there were not such blanket limitations at that time that were preventing people under 18 from having firearms. That's not true. That's not true. Do you know what they called people under the age of 21? I'm talking about age 21 at the founding of our country and for many years until actually modern times. Do you know what two words were used? I'm not familiar with those two words, no. One you use in your brief that's called minor. They've been called minors. Under 21, traditionally, we're called minors. Okay, I am familiar with that term. And the other, which you might find a little surprising, but you can check it out, and that's they were called infants. So, anyone under the age of 21 was called an infant. And in fact, with military, a militia service, if you were an adult, you had to bring your own weapon. If you were a minor male, you didn't, and your parents would have to provide you their weapon because you were not allowed to have weapons when you were an infant. And that was the law around the country. Now, that didn't mean that you couldn't learn how to shoot. You could, under supervision. You could shoot animals, and they did that, supervision. But to own and walk around with a firearm, according to historians that have really in-depthly studied this, it comports with what the Supreme Court said in Heller. So, I just, you know, are we making, going through something that's just actions that aren't going to make any difference? Or is there something here that to hang one's head on when the Supreme Court, again, in the Illinois Supreme Court, has been pretty clear? Right, right. Well, I think there is, you know, something here that is a bit of a differentiating factor. And indeed, what that would be is, you know, we are dealing with possession only because he was possessing this firearm on his person. And like you said, at the time of the founding, you know, if 16 and 17-year-olds were drafted into the military, they were provided with those weapons. They could not necessarily own them. Likewise here, we're not dealing with a situation of whether he had rightful ownership of a handgun or whether, or the main portion of our argument is not whether or not 16 or 17-year-olds should be able to go out and buy firearms. But rather, in this specific situation, what we are arguing is that the blanket provision preventing him from carrying a concealable firearm on his person is unconstitutional in light of the history. We can agree that he wasn't in militia. He wasn't in military service. Certainly. In fact, until quite recently, I think 1970s, if I'm not mistaken, those under 21 didn't even have the right to vote. Right? Certainly. Again, that's a right that's provided. So they have been treated differently throughout history. This is another indication. Right. I do think, again, that's why this analysis is necessary to go back through and do a very, you know, robust search of these historical laws to do this analysis in accordance with what Bruin has set out. I also would like to point out, in terms of the voting limitations, that those are actually spelled out and in the Second Amendment, there is no age or maturity limitation. There actually was a recent federal decision in Reese versus the Borough of Alcohol, Tobacco, Firearms and Explosives that agreed with this argument and that they said there is no historical analog actually for banning the sale of guns to minors because there is no age or maturity restriction explicitly set out in the Second Amendment itself. On that note, I would like to also point out that, you know, first... That argument doesn't take account of the history where they could not buy weapons during the, you know, somebody wanted to have it two ways, right? Just because it doesn't say it in the Second Amendment, but then we're supposed to look at the history and the history shows that someone who was an infant could not purchase firearms. So, you know, it's kind of a strange... And in any event, it doesn't just subject us to disregard to the Supreme Courts of Illinois and United States. I'm sorry, I would not... Oh, I'm sorry, I didn't mean to cut you off. Ms. Yasmin, so I guess that's the point. In 2008, Heller says in paragraph 27, three times they use the word possession, and it says possession by minors is conduct that falls outside the scope of the Second Amendment. They go on to say no right for minors to own and possess. Go on to say laws banning juvenile possession has been commonplace for 150 years. So your argument is possession. We have word from the Supreme Court, 2008. Even if we thought that you were right, how do we disregard it? Well, I don't think that we need to disregard that, Your Honor, but rather I do think that there needs to be a new analysis done in light of Bruin, which, as you acknowledge, it might come to the same result, but it might not. Because also, I think what's important to point out, in Heller, as you were saying, they determined that minors possessing guns was not covered conduct under the Second Amendment. But I believe, you know, under the Bruin test, that would actually sort of be conflating the first step and the second step. And, of course, the Bruin test did not exist at that time, so they were not able to apply that test. But the first step very strictly just asks, is the conduct itself covered under the plain text of the Second Amendment? And only after that, the conduct is covered under that analysis. And only after that would the court move on to look at the historical analogs. Paragraph 27 that Justice Gamerath has referred to, and I'm quoting, the possession of handguns by minors is conduct that falls outside the scope of the Second Amendment's protection. So they have considered the conduct. And again, they did not reverse, they did not limit Heller. So you would be asking us, or the Supreme Court would have to revisit Heller? Otherwise, this has been pretty much determined. The exact question that's being presented here has been determined in Heller. Well, I do think it is possible, you know, with the way that these laws are evolving, that the Supreme Court will have to revisit Heller. A lot of things are up in the air right now, including how the two part Bruin test needs to be applied. Which is why I think this analysis is especially necessary. There is quite a lot of amongst various legal minds about what exactly this means. And I think, Ms. Jessamin, we don't, we not only have what Heller, but we also have our Supreme Court's decision in Aguilar, which says the exact same thing. And help us with what do you believe that, what do you believe has changed? Tell us what you believe has changed. Well, I believe what has changed is, you know, the actual analysis that we are asked to do here. Because, you know, there used to be means and scrutiny as a portion of that analysis. And even if these decisions prior to Bruin, even if, you know, the fact that the judge considered policy implications isn't necessarily very present or explicit throughout the decision. That doesn't mean that those policy considerations weren't actually considered. And in fact, there are cases that do show that, you know, justices have in the past prior to Bruin considered policy implications when looking at challenges, constitutionality challenges to gun laws. And so because Bruin has made so explicit a couple of things, one, that it is indeed the state's burden to bring up a historical analog. And which was not the case before. And two, the fact that means and scrutiny is not supposed to factor into this two-step analysis, it could potentially change these results, which is why there needs to be a new analysis done. In your view, what would the state have to do to prove this? Can't they just hand the Heller decision to the court and say, here you go. We've met our burden. Well, I believe based on the holding in Bruin that they would actually need to supply some specific laws that are analogous to the law that is being challenged in this case, because, you know, every provision is different. And so even if Heller did look at a broad history of laws pertaining to juveniles, here we have a very specific subsection of the Illinois statute at play. And what the state's burden would be, would be to find analogs for that specific subsection of that statute, explain why they are analogous and why then that this restriction should be upheld as constitutional. Your time is up. Do you want to sum up anything you want to say right now? And then you still have two minutes. Sure, sure. So, yeah, to sum up the argument, the first thing that we are asking you today is to find that that Illinois law that prevents people younger than 18 from carrying concealable firearms unconstitutional under the two-step Bruin analysis. And the second part, I'll just go briefly into the second argument, which is that Jonathan Prym made a substantial showing in his post-conviction petition that his constitutional right to due process was violated, where the sentencing judge unequivocally and explicitly relied on that void conviction when fashioning his 40-year prison sentence. I would point out the fact that Illinois courts have long held that in situations where an invalid prior conviction was considered an aggravation, the sentence must be vacated. So, in conclusion, we would ask that this court vacate Jonathan Prym's 40-year sentence and remand for resentencing. And unless your honors have any further questions for me, I will use the remainder of my time for rebuttal. Thank you very much. Appreciate it. Good afternoon. The court has covered many of the points that I was prepared to emphasize, and I think rightly so. We have three Supreme Court decisions, particularly the Aguilar decision in our Supreme Court, that address this very issue and address the very same arguments that the petitioner raises in this case here. It addressed those questions under the first prong of the Wilson test, and the Wilson test was based on the U.S. Supreme Court's decisions in Heller and McDonald. And the first element of the Wilson test is essentially the first element of the New Bruin test, which asks whether the conduct at issue is covered under the Second Amendment. There's no substantive difference between prong one of Wilson and the first part of the New Bruin test. So, applying Wilson prong one, applying the first or analyzing the first issue in Aguilar, our Supreme Court concluded that possession of firearms by persons under 21 years of age or by a 17-year-old is in fact conduct not covered by the Second Amendment. That is the law that is controlling in this case. This court, obviously, as an appellate court, is bound to follow Supreme Court precedent on controlling issues such as we have here. The Supreme Court... I believe we should, that we are obligated to have another analysis, is basically what you're saying. Under the Supreme Court precedent, we don't need to go over, follow Bruin's different analysis steps than Heller. Well, the question is whether there is a different analysis required under Bruin than Heller. You don't think there is? I do not. Not when we're talking about the first step. The first question that Bruin asks is whether the conduct is protected under the Second Amendment. Our Supreme Court, in deciding Aguilar, the first question it addressed was whether possession of a concealed firearm by a 17-year-old is protected under the Second Amendment. It's the very same substantive question under both Bruin and under Wilson as applied in Aguilar. And our Supreme Court concluded in Aguilar that possession of a concealable handgun by someone under the age of 18 is not protected by the Second Amendment. In other words, it essentially conducted and applied Part 1 of the Bruin test and found that the Statute 24-3.181 passes muster based on that analysis determination of whether the conduct is covered. If we look at it from the second element of the Bruin test, I don't think we need to get there, but even if we do, because some of the courts have kind of said, well, if we generally categorize the conduct as possession of a weapon, then we'll assume that would be covered under Bruin. So we'll take a look at the analog question. So when we talk analog, we don't need a specific statute that is in accord or lines up precisely with the statute at issue. As this court has pointed out, we're looking at whether or not the statute is consistent with the tradition and principles that were in place when the Second Amendment was enacted and ratified. And that is the essence. That's what we're trying to look at. And Aguilar looked at that question. It examined the historical evidence to determine whether or not age-based restrictions on access, possession of firearms were known to the founding fathers, were known at the time of the founding, and it concluded that it was. And again, the court has already quoted the language from Heller from Aguilar about the long-standing tradition of restricting and limiting access of firearms to infants and minors, persons under 21. So there is nothing unique or distinct or different about this case that separates it from Aguilar, and Aguilar applied the test, the same substantive test that is called for under Bruin. Under that test, the court determined this conduct is not covered by the Second Amendment. It further determined that there is a long-standing history of firearm regulation based on age, which restricts access to persons under 21 to firearms. So however we apply the Bruin test here, we end up with the same result, which is that reached in Aguilar, which is that we have conduct that's not covered and therefore not protected and therefore regulatable. But even if we say that it is covered and we go to the historical analog element of the Bruin test, we end up with a situation where the statute passes muster because regulation of firearms limiting access by persons under 21 is firmly rooted in our historical tradition, is long-standing, and thereby satisfies our Bruin test. So. Just if we did reach a second issue, one of the criticisms in the reply was that you didn't discuss any of the cases that were cited in the opening brief by Prim. What's your response? Well, we didn't do so because there was no need to do so in light of our Supreme Court having done so and having made the determination that, in fact, there is such regulation, age-based restrictions, is deeply rooted in our tradition. So you're just saying that you don't believe we're ever going to get to that issue. So that was your argument. Well, that's the second. Because the judge did mention that Prim did not follow what he was supposed to be doing when he was on probation, and he did give him 40 years. So it seems that under the case law, there may be a basis there to say that he should be resentenced if we got to that issue. Okay, so turning to the second issue. Right. So the question is, how do we interpret that language by the sentencing judge or by the trial judge of sentence? Was he considering the UPF conviction in aggravation, or was he assessing petitioners' rehabilitative potential? And I think the better construction of that language, better interpretation, is that the court was looking at rehabilitative potential, as the court was required to do, and said that the individual's history bore on how he would evaluate and determine and assess rehabilitative potential. As you pointed out, Justice Simon, or I believe perhaps it was Justice Walker, what the court zeroed in on in sentencing, as he explained when called about it, is that I was looking at the fact that the petitioner here was the ringleader. And again, you know, what happened here? We had four men attack two men, and literally beat a man to death at a bus stop outside the defendant's, or in this case, petitioner's apartment building, just beat him to death. So we have a serious, serious crime. And then we have this issue of rehabilitative potential, where the court found that this person has not demonstrated, or has raised questions about their rehabilitative potential, because of how they handled their probation and responded to that in connection with the prior offense. I think that's the more, I think that's the more apt interpretation of the trial court's comments. If I'll ever... Except the court did specifically say, I'm looking at someone who is convicted of unlawful possession, placed on probation, and the probation was completed unsatisfactorily. I don't disagree with you when you say the court was looking at its rehabilitative potential. However, could the court consider the fact that probation was completed unsatisfactorily, if that unlawful possession conviction was void? I'm sorry, I didn't hear the last part of the question. So, could the court even consider the fact that probation was completed unsatisfactorily, if that underlying conviction was void? Oh, no. I mean, if the underlying conviction was void, then nothing about that conviction, or related to that conviction, could ever be considered. But it has, it certainly obviously wasn't voided at the time, but more importantly, it should not be voided for all the reasons that we've been talking about here, that the statute passes constitutional muster, as found by Aguilar, and even under the Bruin analysis, which in substance, really does work the same as step one of the Wilson analysis. Any other questions? If not, do you want to summarize? Certainly. We think Aguilar controls here. We think that in light of the Supreme Court's finding that 24-3.1A1 does not impede or does not restrict conduct protected by the Second Amendment, the statute passes muster, and that defendant's post-conviction petition was properly denied, and the lower court's ruling should be affirmed. Thank you. Ms. Yesman? Thank you, Your Honors. Just briefly, I just want to address a few of the points that the state made. I would like to again come back to the fact that all of the decisions that the state relies on were made prior to Bruin, and I do understand that those decisions are still standing. However, Bruin did indeed set out a new part test and clarify how those decisions were supposed to be made, and so the required analysis has changed, which does necessitate a new analysis in this scenario. I think it is also important to point out that in those prior decisions, the court was not looking at this specific provision of the Illinois statute, although it did reach issues having to do with juvenile ownership and possession of guns. This particular provision of the statute was considered, which is another reason that a full analysis here under the Bruin II part test is necessary. Finally, I would just like to conclude with, again, in terms of the second part of our argument today, asserting that the judge indeed explicitly considered in their aggravation this prior void conviction, and that, yes, the judge did consider rehabilitative potential as well, but even in that exact quote from the judge, there is an and there. So the judge was considering that rehabilitative potential and also the conviction itself, and as the justices in the state have pointed out, if a conviction is void, it cannot come into consideration whatsoever. So we are respectfully asking that this court find the Illinois law void and the conviction void, and therefore to remand this case for resentencing. Thank you, Your Honors. I want to thank both of you. Thank you for your briefs. Thank you for your arguments. We will take the case under consideration and decide soon. So I appreciate very much both of your arguments. We are adjourned. Thank you, Your Honors. Thank you, Your Honors.